IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PASTORI M. BALELE,

                                                                 OPINION AND ORDER

                      Plaintiff,

                                                                   13-cv-171-bbc

     v.

PDQ FOOD STORES, INC.,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Pastori Balele is suing defendant PDQ Food Stores, Inc. He contends that because of his age, race and sex and his complaints about health hazards in defendant's stores, defendant retaliated and discriminated against him by cutting his work hours, denying him a transfer to another store and eventually terminating him. In addition, he contends that when he was terminated he was denied the due process to which he was entitled as the owner of shares of defendant's stock.

Defendant has moved for summary judgment, contending that plaintiff cannot show that his hours were cut in relation to other employees or that either discrimination or retaliation or both played any part in its decision to deny plaintiff's request for a transfer to another store and then to terminate him; to the contrary, it says, it had good reasons for denying plaintiff the transfer he asked for and it gave him more opportunities than most employees before deciding that his violations of company policy required his dismissal.

1

Finally, defendant denies that plaintiff's ownership of its stock entitled him to due process in connection with his discharge.

After reviewing the uncontested facts, I find that plaintiff has failed to show that he was the victim of either discrimination or retaliation or that he was entitled to due process before his discharge. Therefore, summary motion will be granted in defendant's favor.

From the parties' proposed findings of fact, I find that the following facts are undisputed.

## UNDISPUTED FACTS

Defendant PDQ Food Stores, Inc. is a Wisconsin corporation operating 45 convenience stores in three states. It is a non-union employer and considers all employment at will. It has adopted a detailed Policies and Procedures Manual that it provides to each employee. The policies prohibit unlawful discrimination and harassment and describe defendant's internal policies and operating procedures.

In general, defendant follows a system of progressive discipline for less serious offenses or policy violations. The initial discipline is a verbal notice, followed by a written notice, then final notice and discharge. (Plaintiff says that defendant has a policy of wiping out any prior discipline at the end of each year, but he has adduced no evidence to support his statement; defendant denies that it has such a practice.)

Plaintiff is an African American male who was 68 in 2013. He was employed by defendant as a sales associate from June 30, 2004 until November 7, 2012, when he was

2

discharged. At all times, his employment was at will.

Plaintiff began his employment at defendant's Store No. 111 in Madison, undergoing extensive training on defendant's policies on such matters as the sale of alcohol and tobacco products, cash handling and the processing of consumer transactions.

Defendant's sales associates are required to check a photo identification of anyone wishing to buy alcohol or tobacco products who appears to be under a certain age. In 2007, the cutoff age was 30; in April 2011, it was 40. Defendant monitors its employees' adherence to the policy by, among other methods, sending "secret shoppers" into its stores to check whether sales associates ask for photo identification from persons who are not obviously over the age cutoff. (Plaintiff says that defendant did not provide sufficient training to teach employees to subjectively determine which people did not have to show a photo identification, but nothing in the proposed facts suggests that any employee had to make "subjective determinations." If they had any doubt at all, they were to ask for identification.)

Plaintiff violated the tobacco policy on April 24, 2005 and received a verbal notice from his store manager. He violated the policy again on October 31, 2008 and received a written notice from the store manager, which was approved by defendant's division manager, Lori Jungbluth. He received a final notice for a third violation of the tobacco policy on February 8, 2010 from the store manager, also approved by Jungbluth. At this time, he was given another copy of the policy and required to acknowledge it. On February 23, 2010, he violated the policy for the fourth time. Ordinarily, this lapse would have resulted in

3

termination, but Jongbluth and Phil Troia, vice president of operations, decided to give plaintiff another chance and suspended him for a week without pay instead of discharging him. Jungbluth noted on the final notice she gave plaintiff that defendant was giving him another chance because of his long employment history "and the value he has been to the company in other areas." Dkt. #52, exh. 2.

In late February 2010, plaintiff was assigned to work at two different stores, Nos. 120 and 124, still in Madison, both of which had significantly higher sales and more customers than Store No. 111. (Defendant denies that they were busier than other stores in the afternoons, when he was working. The dispute is immaterial.) On April 7, 2010, plaintiff failed to ring up a customer's gasoline purchase for the second time and received a verbal notice, as he had when he committed the same infraction in February 2009. He also received his first verbal notice for tardiness. On April 12, 2010, plaintiff violated the tobacco policy again, by not asking a customer at Store No. 120 for photo identification. He was issued a written notice by the store manager, Nicole Harrison, after she had consulted with Jungbluth.

On July 2, 2010, plaintiff received a verbal notice from his manager at Store No. 124, Greg Paglusch, for making inappropriate entries in a store communications book; he received another verbal notice from Paglusch on July 30, 2010 for leaving cash in the register at closing, rather than putting it in the safe in compliance with defendant's policies. He received another verbal notice from Paglusch on August 26, 2010, for not completing a customer transaction properly.

At Store No. 120, plaintiff received a verbal notice on November 12, 2010 for not doing his assigned duties; he received a second one on November 22, 2010, for not paying attention to a customer who had driven away without paying for his gas purchase. When issuing the verbal notice relating to not paying attention, the store manager, Harrison, noted that plaintiff had been engaged in a conversation with another employee, Scott Hook, a Caucasian male, who also received a verbal notice for not paying attention. Plaintiff received a final written notice on December 7, 2010 for not doing his assigned duties. Hook received a written notice on the same day for the same reason.

On December 17, 2010, plaintiff returned to Store No. 111 at Harrison's suggestion and Jungbluth's approval. On March 19, 2011, plaintiff was counseled by the manager at No. 111, Greg Gillespie, along with Tom Brudos, a store supervisor, about a complaint from a customer.

In April 2011, defendant amended its tobacco policy to require photo identification from persons who did not appear to be at least 40. On July 14, 2011, plaintiff failed to ask for proper documentation from a secret shopper buying a tobacco product. Again, he was given another chance. He was suspended without pay for two weeks, but not fired. In January 2012, Ed Fischer, the store manager at No. 111 at the time, issued a verbal notice to plaintiff for a mistake in charging up a transaction that resulted in one customer's being charged for another customer's purchase.

On June 27, 2012, plaintiff wrote Mark Vance, the new manager at No. 111, offering his opinions on a number of topics, including scheduling overtime for the two assistant

5

managers, ways of better stocking the cooler and his concern that the store was not kept cleaner. He complained that a younger African-American employee had been scheduled to work more hours than he had. (He has no evidence that this was true.) He also asked Vance to talk to one of plaintiff's co-workers, Lindsay Williams, to find out why Williams was uncomfortable working with plaintiff, suggesting that it might be because Williams's grandparents had been slave owners. Vance forwarded the communication to one of defendant's store supervisors, Tom Hoffman, who investigated each of plaintiff's concerns. Hoffman talked with Williams and learned that he had told a customer about the slave ownership, adding that finding out about it had made him feel uncomfortable. Williams told Hoffman he was frustrated with plaintiff because plaintiff did only what he wanted to do. He added that he was thinking of quitting because of plaintiff's conduct. Hoffman told Williams that he should not be talking to customers about his grandparents' having owned slaves; such conversations were not proper for the workplace.

Hoffman looked into plaintiff's other concerns and provided a written response to each. He reviewed six weeks of schedules and concluded that plaintiff was not getting fewer hours than other employees, despite his belief to the contrary. In other areas, he either addressed plaintiff's complaints or explained to plaintiff why he did not agree with them.

On July 27, 2012, Justin Lange, a Caucasian male, replaced Vance as manager at Store No. 111. At the time, six employees were regularly assigned to the store. Two of them, plaintiff and Alex Brown, were African-American.

On September 3, 2012, Lange issued plaintiff a verbal notice for having $239 in the

6

register, which was a violation of defendant's policy that employees are not to have more than $50 in the register between 10 p.m. and 5 a.m and no more than $75 at any other time. On September 6, 2012, Lange issued a second verbal notice to plaintiff for not removing signage from an expired in-store promotion and not using the proper cash register to process the transactions. (Plaintiff says that he was never trained in removing signage.) On September 11, 2012, Lange issued a third verbal notice to plaintiff for accepting cash from a customer without counting it. The customer said he had given plaintiff $60 to pay for a $50 transaction and that plaintiff had not given him $10 back. Plaintiff was unable to say whether he had received $60 or $50 because he had not counted the money when he received it. Lange has disciplined other employees, including Lance Benson, a Caucasian male, for not counting cash received from a customer or when making change for a customer.

On or about September 18, 2012, plaintiff sent Lange a long email, telling him what "good things" Lange had done for the store and then listing concerns and suggestions he had about the store: the boxes were stacked too high, the need to keep empty crates outside, the cooler should be stocked better, the merchandise was not displayed properly, filthy trays were being put on shelves with bakery items and dishes were not being washed properly. Lange discussed the suggestions with plaintiff, adopting some of them and rejecting others.

Plaintiff received verbal and written notices in September and October 2012 for not properly processing an electronic benefits transaction, for improperly using the Error Correct key on the cash register and for not following policy when recording and documenting situations in which transactions were voided or re-rung.

On October 13, 2012, plaintiff emailed Hoffman, asking him to provide help for Lange, who seemed to plaintiff to be struggling with all of the tasks assigned to a store manager. On October 21, 2012, plaintiff sent a followup email to Hoffman, expressing concerns about Lange's workload. He did not raise any concerns about Lange's discipline or say anything to suggest that Lange was treating plaintiff differently because of his age, race or sex.

On October 22, plaintiff allowed a customer to use coupons for discounts on Hershey candy bars without having to purchase a fountain soda or food service item, as the coupon specified. When Lindsay Williams told plaintiff he was not following the terms of the coupon, plaintiff argued with him. Hoffman investigated the situation and found plaintiff's conduct a serious violation of company policies. He decided to issue plaintiff a final notice, which he did on October 24, 2012. Jungbluth agreed with the decision.

On October 25, plaintiff wrote to Lange, contending that the coupon terms were deceptive. He objected to Lange's having pushed him aside to complete two transactions, but he did not object to any of the disciplinary actions Lange had issued him. He did say, "I think you have a low opinion of me because I am black. Please let's work together as a team." Dkt. #53, exh. 14. Lange forwarded the note to Hoffman, who called plaintiff to ask about the two incidents with Lange. Plaintiff gave Hoffman an approximate range of dates and times for only one of the incidents. Hoffman reviewed store surveillance tapes for that time period but could find no evidence of Lange's having been rude and disrespectful to plaintiff or having pushed him aside to wait on a customer. He met with plaintiff to

8

explain the results of his investigation and to let plaintiff know how seriously defendant took the coupon incident. He also gave plaintiff a written explanation of his investigation into plaintiff's complaints. He warned plaintiff that any further violations of company policy would result in his discharge.

On October 30, 2012, Lange told Hoffman that plaintiff had violated defendant's cash register policies for the second time in a few weeks. Hoffman realized that termination would be justified in light of plaintiff's repeated violations, but he gave plaintiff a final notice instead, telling plaintiff that any other policy violation would result in his discharge. About this time, plaintiff asked Hoffman whether he could transfer to a different store, either No. 120 or No. 124, adding that because of his age, he had the sense that the No. 111 store might be getting too fast for him. Jongbluth and Hoffman discussed plaintiff's request but rejected it because the stores to which he wanted to transfer were actually busier than No. 111. They viewed the change as inadvisable because their review of plaintiff's prior discipline showed that he had a tendency to not pay attention to what he was doing and to ignore defendant's policies. Hoffman wrote plaintiff to explain why defendant was not granting his transfer request, explaining that the other stores were actually busier and that when he had worked at them, he had made many of the same mistakes he had made at Store No. 111.

On November 5, 2012, plaintiff sold a lottery ticket to a customer who paid for it with a debit card, in violation of store policy and state law. Plaintiff then sold the customer the same lottery card for cash. (Plaintiff denies that the sale violated defendant's policies

9

because the customer could have bought a PDQ gift card and used it to buy the ticket. .) Lange and Hoffman reviewed the surveillance tape showing the transaction and Hoffman concluded that plaintiff should be discharged. He checked with Jungbluth, who agreed. Accordingly, on November 7, 2012, Hoffman met with plaintiff, told him he was being terminated and gave him a termination notice, which summarized the lottery ticket incident, termed the incident a violation of Work Rule #22 of defendant's Policies and Procedures manual and noted that it had occurred after defendant had given plaintiff a final warning.

OPINION

Plaintiff is bringing three claims: (1) he was retaliated against because of his complaints about the health and safety hazards at Store No. 111; (2) he was discriminated against on the basis of race, age and sex when his hours were cut, when he was denied a transfer to another store and when he was terminated; and (3) he was denied a hearing when he was terminated despite his entitlement to due process as a shareholder.

A. Retaliation

The initial problem with plaintiff's claim of retaliation is that he has cited no evidence to support it. He has not shown that any manager or other representative of defendant took any adverse action against him because of the complaints he made about the conditions at store No. 111. To the contrary, the undisputed facts show that defendant took plaintiff's complaints seriously and responded to them.

Even if plaintiff could show that defendant did retaliate against him for his complaints about the conditions, he has not shown that he could bring such a claim in this court. Plaintiff has not identified any statute or constitutional provision that protects employees who complain about workplace conditions. The most likely source of any such protection is the Occupational Safety & Health Act, 29 U.S.C. §§ 651-78, but that law does not permit an employee to bring a direct action against his employer. Instead, an employee who believes he has been discharged or otherwise discriminated must file a complaint with the Secretary of Labor within 30 days of the violation. § 660(2). If the Secretary determines that the complaint has merit, the Secretary can bring suit against the employer in federal court. Id. Donovan v. Occupational Safety and Health Review Commission, 713 F.2d 918, 927 (2d Cir. 1983) (apparent from detailed statutory scheme that public rights created under Act are to be protected by Secretary; employees' right is limited to bringing mandamus action against Secretary if he fails to enjoin imminent danger at workplace). Accordingly, plaintiff cannot proceed on his retaliation claim.

### B. Discrimination on the Basis of Race, Age or Sex

To prevail on a claim of discrimination, a plaintiff has at least two procedural options. He may present evidence, either direct of circumstantial, that his employer's discriminatory animus led the employer to take an adverse employment action against him. Alternatively, the employee may try to prove his claim through the indirect method, which requires him to show that (1) he is a member of a protected class; (2) his job performance

was meeting his employer's reasonable expectations; (3) he was subject to a materially adverse employment action and (4) his employer treated similarly situated employees more favorably. Coleman v. Donahoe, 667 F.3d 835, 845 (7th Cir. 2012 (citing Burks v. Wisconsin Department of Transportation, 464 F.3d 744, 750-51 (7th Cir. 2006); McDonnell Douglas v. Green, 411 U.S. 792 (1973)).

Plaintiff has no evidence to sustain a claim under the direct method. He has alleged that at least two of his supervisors were "skinheads raised to hate black males," and that he was discharged the day after the 2012 national election because the managers were angry about President Obama's re-election, but these allegations are not factual evidence of a discriminatory animus. Plaintiff needs specific incidents or comments by persons in a position to speak for defendant; he cannot rely on his own unsupported views of his managers' viewpoints. Plaintiff has provided no foundation for his beliefs that his supervisors hated blacks or were angry about President Obama's re-election.

Accordingly, I will consider whether plaintiff could prove his claim through the indirect method. Plaintiff's allegation that he is a black male aged 68 is enough to show that he satisfies the first factor, that he is a member of a protected class. (In fact, he alleges that he is a member of three protected classes (race, sex and age)). He has alleged that he was discharged or denied a transfer, so he satisfies the third factor, that he suffered an adverse employment action. However, he has not shown that he could satisfy the second factor: that his job performance was meeting defendant's legitimate expectations. To the contrary, he admits making most of the mistakes attributed to him, although he tries to minimize them

by saying that many of them were defendant's fault for not training him properly or for not including the matter in the policy handbook. As to the fourth factor, that defendant treated him less favorably than it treated other employees, he says that defendant has admitted that other employees made the same mistakes he did, which is true. He takes this a step further, however, saying that defendant's admission means that all the other employees made all the mistakes he did and thus were situated similarly to him and yet were not fired.

Plaintiff reads too much into defendant's admission. Defendant did not say that every other employee made all of the same mistakes that plaintiff did or that any of the others made as many mistakes as plaintiff did. If it had, plaintiff might have grounds for a finding of discrimination. Without such an admission by defendant, however, plaintiff cannot go forward on his claim of discrimination without producing evidence that some particular employees made as many mistakes as he did, that their mistakes were essentially similar to the ones he made, that they were neither male, black nor over 65, and that they were not discharged. He has not produced any evidence that he was treated less favorably than white, younger or female employees. Not only has he failed to produce such evidence but he has admitted not even knowing before he initiated this lawsuit that other employers at Store No. 111 were disciplined for the same violations as he was. Plt.'s Br., dkt. #59, at 1. Apparently recognizing his evidentiary void, he contends that there was a difference "in level and intensity Justin [Lange] and Hoffman badly treated [plaintiff] compared to other employees," id. at 7, but he does not support the statement with any actual examples of the alleged difference in treatment. His subjective impression that he was treated less favorably by

defendant is not proof; he must provide the court actual incidents of differential treatment in order to avoid the grant of summary judgment in defendant's favor.

In alleging that he was a victim of sex discrimination, defendant refers to another employee named Molly who apparently was given a transfer from one of defendant's stores to another upon request, whereas his request for a transfer was denied. Plaintiff alleged in his complaint and in his brief in opposition to defendant's motion for summary judgment that Molly was transferred after she said she had been harassed by her manager at the store where she had been working, but he has no actual evidence of why the transfer took place or even whether it was at Molly's request. Without this actual evidence, Molly's transfer cannot be used to show that she was treated more favorably than plaintiff was.

## C. Due Process

Although plaintiff contends that he was entitled to due process before being terminated because he owned shares in defendant, he has made no showing that ownership of stock entitled him to special protections before he could be discharged. His mere contention is not evidence.

## D. Summary

Plaintiff has produced no evidence to show that he was discriminated against because of his age, his sex or his race. He has not shown that defendant had a discriminatory animus against black male older workers in general or against him in particular. The number of

second, third and fourth chances plaintiff was given suggests that the contrary was true: defendant wanted to keep plaintiff as an employee. This does not seem surprising. After all, he was tardy only once in eight years, he was willing to transfer to other stores when asked, he cared about workplace conditions and he seems to have been popular with defendant's customers. At some point, however, defendant lost its tolerance for plaintiff's many mistakes and decided it could not keep him on as an employee. As unfortunate as it was for plaintiff, he has not shown the denial of his request for a transfer or his discharge to be discriminatory. Accordingly, defendant's motion for summary judgment will be granted.

ORDER

IT IS ORDERED that defendant PDQ Food Stores, Inc.'s motion for summary judgment, dkt. #48, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 24th day of February, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge